UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAUL GRYWALSKI | ) | CASE NO: |
| 1232 Greenhaven Lane | ) | |
| Wadsworth, Ohio 44281 | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| vs. | ) | **COMPLAINT FOR INJUNCTIVE** |
| | ) | **RELIEF AND DAMAGES** |
| PARKER HANNIFIN, LLC | ) | |
| 6035 Parkland Blvd | ) | |
| Cleveland, Ohio 44124 | ) | **(Jury Demand Endorsed Hereon)** |
| | ) | |
| And | ) | |
| | ) | |
| BRIAN PERRY | ) | |
| c/o Parker Hannifin | ) | |
| 135 Quadral Drive | ) | |
| Wadsworth, Ohio 44281 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| MONIQUE GRIER | ) | |
| c/o Parker Hannifin | ) | |
| 135 Quadral Drive | ) | |
| Wadsworth, Ohio 44281 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| PATTY BOLLHEIMER | ) | |
| c/o Parker Hannifin | ) | |
| 135 Quadral Drive | ) | |
| Wadsworth, Ohio 44281 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Paul Grywalski ("Grywalski"), by and through undersigned counsel, as his

Complaint against Defendants states and avers the following:

**PARTIES**

1. Grywalski is a resident of the city of Wadsworth, county of Medina, State of Ohio.



2. Parker Hannifin, LLC ("Parker") is a domestic limited liability company with its principal place of business located at 6035 Parkland Boulevard, Cleveland, in the county of Cuyahoga, state of Ohio.

3. Parker owns and operates a location at 135 Quadral Drive, Wadsworth, in the county of Medina, state of Ohio.

4. During all times material to this Complaint, Parker was an employer as defined by 29 U.S.C. § 2611(4)(A)(i).

5. During all times material to this Complaint, Parker was an employer within the meaning of R.C. § 4112.02.

6. At all times referenced herein, Parker was Grywalski's employer within the meaning of R.C. § 4112.01(A)(2).

7. Defendant Brian Perry is a resident of the state of Ohio.

8. Perry was at all times hereinafter mentioned acting in the course and scope of his employment at Parker.

9. Perry was at all times hereinafter mentioned an individual who was a manager and/or supervisor at Parker who acted directly or indirectly in the interest of Parker in relation to its employees.

10. Perry was an employer within the meaning of R.C. § 4112.01(A)(2).

11. Defendant Monique Grier is a resident of the state of Ohio.

12. Grier was at all times hereinafter mentioned acting in the course and scope of her employment at Parker.

The Employee's Attorney.™



13. Grier was at all times hereinafter mentioned an individual who was a manager and/or supervisor at Parker who acted directly or indirectly in the interest of Parker in relation to its employees.

14. Grier was an employer within the meaning of R.C. § 4112.01(A)(2).

15. Defendant Patty Bollheimer is a resident of the state of Ohio.

16. Bollheimer was at all times hereinafter mentioned acting in the course and scope of her employment at Parker.

17. Bollheimer was at all times hereinafter mentioned an individual who was a manager and/or supervisor at Parker who acted directly or indirectly in the interest of Parker in relation to its employees.

18. Bollheimer was an employer within the meaning of R.C. § 4112.01(A)(2).

19. Grywalksi was at all times hereinafter mentioned acting in the course and scope of his employment at Parker.

## <u>JURISDICTION & VENUE</u>

20. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Grywalski is alleging federal law claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

21. This Court has personal jurisdiction over Parker because it is a for-profit limited liability company that is registered to conduct business in this District, and at all times material to the allegations contained herein, conducted substantial business in this District and had sufficient minimum contacts within this District.

22. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district,

The Employee's Attorney.™



division, and county within which Parker operated and where a substantial part of the events or omissions giving rise to the claim occurred.

23. All or some of the material events in this matter occurred in Medina County, state of Ohio.

## FACTS

24. Grywalski is a former employee of Parker.

25. Grywalski worked as an Assembler for Parker from December 2017 until February 17, 2021.

26. Grywalski suffers from Narcolepsy.

27. Grywalski suffers from Bi-Polar Disorder.

28. Grywalski suffers from Obsessive Compulsive Disorder.

29. Grywalski suffers from Post Traumatic Stress Disorder.

30. Grywalski suffers from Attention Deficit Disorder.

31. Grywalski is disabled.

32. As a result of suffering from Narcolepsy, Bi-Polar Disorder, Obsessive Compulsive Disorder, Post Traumatic Stress Disorder, and Attention Deficit Disorder, Grywalski is disabled.

33. Grywalski is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

34. Alternatively, Defendants perceived Grywalski as being disabled.

35. Alternatively, Defendants perceived that Grywalski's medical conditions constituted a mental impairment.

36. Alternatively, Defendants perceived Grywalski's disabilities to substantially impair one or more of his major life activities, including working.

37. Grywalski disclosed to Defendants that he suffers from Narcolepsy, Bi-Polar Disorder, Obsessive Compulsive Disorder, Post Traumatic Stress Disorder, and Attention Deficit Disorder ("Grywalski Disability Disclosure").



38. Despite suffering from actual or perceived disabling conditions, Grywalski was fully qualified for, and could perform the essential functions of his job.

39. On or about May 2019, Grywalski made a protected complaint against a coworker, Tom Mauer, to Grier ("First Protected Complaint").

40. In the First Protected Complaint, Grywalski grieved that Mauer displayed a terrible attitude, had emotional outbursts, left work without notice, threw tools, and spoke only in varying levels of screaming.

41. In the First Protected Complaint, Grywalski grieved that Mauer's actions made the workplace hostile and triggered Grywalski's disabilities, especially his Attention Deficit Disorder.

42. In the First Protected Complaint, Grywalski grieved that Mauer's acts of actual and/or threatened violence triggered Grywalski's disabilities.

43. In response to the First Protected Complaint, Grier made harassing and/or offensive comments to Grywalski about Grywalski's disabilities.

44. In response to the First Protected Complaint, dismissed the First Protected Complaint by telling Grywalski to ignore Mauer.

45. Grier dismissed the First Protected Complaint by telling Grywalski he was "too easily distracted."

46. Grier dismissed the First Protected Complaint by telling Grywalski that he needed to "focus better on his work, and less on Mauer."

47. Grier did not investigate Grywalski's First Protected Complaint.

48. Based on Parker's policies, the events of the First Protected Complaint are considered to be significant workplace incidents.

49. Defendants have a policy and practice of fully investigating significant workplace incidents.

The Employee's Attorney.™



50. Defendants have a policy and practice of getting written statements from all participants to significant workplace incidents.

51. Defendants have a policy and practice of getting written statements from all witnesses to significant workplace incidents.

52. Defendants violated their policy and practice of fully investigating significant workplace incidents regarding the First Protected Complaint.

53. Defendants violated their policy and practice of getting written statements from all participants to significant workplace incidents regarding the First Protected Complaint.

54. Defendants violated their policy and practice of getting written statements from all witnesses to significant workplace incidents regarding the First Protected Complaint.

55. Defendants' failure to follow their policy and practice of fully investigating significant workplace incidents was an adverse action against Grywalski.

56. Defendants' failure to follow their policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Grywalski.

57. Defendants' failure to follow their policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Grywalski.

58. Defendants disregarded the First Protected Complaint.

59. Defendants failed to make an adequate response with respect to the First Protected Complaint.

60. In the First Protected Complaint, Grywalski requested to work away from Mauer as an accommodation for his disabilities ("First Accommodation Request").

61. Grywalski' s First Accommodation Request was reasonable.

62. Grywalski's First Accommodation Request did not cause an undue hardship on Parker.



63. Parker did not determine if Grywalski's First Accommodation Request would cause an undue hardship.

64. Grier did not approve Grywalski's First Accommodation Request.

65. After denying Grywalski's First Accommodation Request, Grier did not engage in a dialogue with Grywalski to determine if there were any alternative accommodations for his disabilities.

66. Grier told Mauer that Grywalski made the First Protected Complaint.

67. After learning that Grywalski complained about him in the First Protected Complaint, Mauer increased his hostilities towards Grywalski.

68. After learning that Grywalski complained about him in the First Protected Complaint, Mauer engaged in retaliation toward Grywalski.

69. After learning that Grywalski complained about him in the First Protected Complaint, Mauer purposely slammed tools on the workstation table where Grywalski worked in an attempt to make Grywalski fear physically intimidated.

70. After learning that Grywalski complained about him in the First Protected Complaint, Mauer purposely slammed tools on the workstation table where Grywalski worked in an attempt to distract Grywalski from Grywalski's assigned tasks.

71. Grywalski's ability to focus on work decreased as a result of Grier's handling of the First Protected Complaint.

72. Grywalski's ability to focus on work decreased as a result of Grier denying the First Accommodation Request.

73. In or around September 2020, Grywalski quarantined because his minor child exhibited symptoms of COVID-19 ("Grywalski Quarantine").

74. Grywalski's minor child tested negative for COVID-19.

The Employee's Attorney.™



75. Grywalski requested to return to work after his minor child tested negative for COVID-19.

76. Parker demanded a letter from Grywalski's doctor as a condition to return to work after the Grywalski Quarantine ("Parker Physician Letter Request").

77. Grywalski contacted his doctor the same day he learned of the Parker Physician Letter Request.

78. Grywalski's doctor waited several days to respond to the Parker Physician Letter Request.

79. Grywalski returned to work as soon as he received the letter from his doctor to fulfill the Parker Physician Letter Request.

80. Parker accused Grywalski of malingering because his minor child tested negative days before the doctor issued Grywalski a letter to satisfy the Parker Physician Letter Request.

81. Parker suspended Grywalski for remaining off work while he attempted to fulfill the Parker Physician Letter Request.

82. Parker suspended Grywalski for waiting to return to work until he received the doctor's letter to fulfill the Parker Physician Letter Request, even though Parker demanded he obtain the letter as a condition of his return to work.

83. Bollheimer and Perry held a teleconference with Grywalski to suspend his employment ("Grywalski Suspension Teleconference").

84. During the Grywalski Suspension Teleconference, Bollheimer told Grywalski that she would never have hired Grywalski if the decision had been up to her.

85. During the Grywalski Suspension Teleconference, Bollheimer told Grywalski that she would fire Grywalski immediately if she had the ability to do so.

86. During the Grywalski Suspension Teleconference, Bollheimer and Perry accused Grywalski of violating policy by remaining off work while he attempted to fulfill the Parker Physician Letter Request.

The Employee's Attorney.™



87. During the Grywalski Suspension Teleconference, Grywalski asked to see the policy that he was being accused of violating and Bollheimer responded it was not a written policy.

88. During the Grywalski Suspension Teleconference, Grywalski asked to see the policy that he was being accused of violating and Bollheimer responded that she did not need to write a policy for "each stupid little thing."

89. Bollheimer and Perry's conduct during the Grywalski Suspension Teleconference foreshadowed Defendants' plan to continue disciplining Grywalski for perceived violations of written and/or unwritten policy in order to terminate his employment.

90. Patty and Brian told Paul to sign his discipline form as a condition of his employment.

91. Parker has a progressive discipline policy.

92. Parker's disciplinary policy calls for escalating levels of discipline for performance infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

93. Defendants did not give Grywalski a verbal warning.

94. Defendants did not give Grywalski a first written warning.

95. Defendants did not give Grywalski a second written warning.

96. Defendants treated employees who did not make complaints similar to the First Protected Complaint more favorably under the progressive disciplinary system than Grywalski.

97. Skipping steps in the progressive disciplinary system is an adverse employment action.

98. Skipping steps in the progressive disciplinary system shows that Parker's purported reason for Grywalski' s suspension is pretext.

99. Grywalski's suspension was in retaliation for making the First Protected Complaint.

100.    Grywalski disclosed his disabilities to Parker's human resource employee, Matt.

The Employee's Attorney.™



101.  Grywalski made a protected complaint to an employee named Matt in Parker's human resources department alleging that Parker ignored his request to work away from Mauer ("Second Protected Complaint").

102.  In the Second Protected Complaint, Grywalski reported that Mauer's conduct triggered his disabilities.

103.  In the Second Protected Complaint, Grywalski reported that Mauer's conduct made it more difficult for Grywalski to perform his assigned job duties.

104.  In the Second Protected Complaint, Grywalski grieved that Parker retaliated against Grywalski for making the First Protected Complaint by suspending him after the Grywalski Quarantine.

105.  In the Second Protected Complaint, Grywalski grieved that Parker's dismissal of the First Protected Complaint, and Parker's retaliation in response to First Protected Complaint triggered his disabilities.

106.  Defendants did not investigate Grywalski's Second Protected Complaint.

107.  Based on Parker's policies, the events of the Second Protected Complaint are considered to be significant workplace incidents.

108.  Defendants have a policy and practice of fully investigating significant workplace incidents.

109.  Defendants have a policy and practice of getting written statements from all participants to significant workplace incidents.

110.  Defendants have a policy and practice of getting written statements from all witnesses to significant workplace incidents.

111.  Defendants violated their policy and practice of fully investigating significant workplace incidents regarding the Second Protected Complaint.

The Employee's Attorney.™



112.    Defendants violated their policy and practice of getting written statements from all participants to significant workplace incidents regarding the Second Protected Complaint.

113.    Defendants violated their policy and practice of getting written statements from all witnesses to significant workplace incidents regarding the Second Protected Complaint.

114.    Defendants' failure to follow their policy and practice of fully investigating significant workplace incidents was an adverse action against Grywalski.

115.    Defendants' failure to follow their policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Grywalski.

116.    Defendants' failure to follow their policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Grywalski.

117.    Defendants disregarded the Second Protected Complaint.

118.    After Grywalski made the Second Protected Complaint, Matt suggested Grywalski apply for FMLA leave.

119.    In or around September 2020, Grywalski applied for and received FMLA leave.

120.    After receiving FMLA leave, Parker began a retaliatory plan to discipline Grywalski for meaningless acts.

121.    In or around December 2020, Parker disciplined Grywalski for purported violations of policy that Grywalski had allegedly committed in previous months.

122.    The December 2020 discipline Parker issued Grywalski was a Final Written Warning.

123.    Parker skipped available steps in its progressive discipline policy by issuing Grywalski a Final Written Warning.

124.    Parker did not issue Grywalski a second Written Warning before issuing him a Final Written Warning.

The Employee's Attorney.™



125.    Parker treated employees who had not applied for and received FMLA more favorably under the progressive disciplinary system than Grywalski.

126.    In or around January 2021, Grywalski injured his right arm while performing his work duties ("Work-related Injury").

127.    Grywalski informed Grier of his Work-related Injury.

128.    Grier did not report Grywalski's Work-related Injury.

129.    Grier told Grywalski to use Parker's third party, Axiom, to determine the proper medical response to his Work-related Injury.

130.    Axiom told Grywalski to treat his Work-related Injury with heat and ice, anti-inflammatory tablets, and wrapping during the day.

131.    Grywalski followed Axiom's advice for weeks until his pain was no longer bearable.

132.    Grywalski informed Grier that he needed to see a doctor for the Work-related Injury.

133.    Grier refused to authorize a doctor visit for Grywalski's Work-related Injury.

134.    Grywalski continued to work using only his left arm.

135.    Grywalski is ambidextrous.

136.    Grywalski can perform the essential duties of his job with his left arm.

137.    Grier observed Grywalski using his left arm for work.

138.    Grier demanded that Grywalski cease using his left arm for work.

139.    Grier told Grywalski, "that's how you hurt your arm, and we don't want you to hurt your other arm."

140.    Grywalski continued to work by performing only the most restrictive duties possible.

141.    Grywalski used one of his FMLA leave days to deal with the increased stress.

The Employee's Attorney.™



142.   On or about February 17, 2021, Grywalski returned to work and was met by Parker managers, Perry and Bollheimer.

143.   On or about February 17, 2021, Bollheimer told Grywalski he was fired for using his tools while injured.

144.   Bollheimer made and/or participated in the decision to terminate Grywalski's employment.

145.   Perry made and/or participated in the decision to terminate Grywalski's employment.

146.   Grier made and/or participated in the decision to terminate Grywalski's employment.

147.   Grywalski explained he was ambidextrous.

148.   Grywalski explained that Axiom did not restrict his work duties.

149.   Grywalski explained that after Grier told him to stop using his left arm, so he did stop using his left arm.

150.   Bollheimer told Grywalski his explanation did not matter.

151.   Parker's reason for termination of Grywalski was pretextual.

152.   Parker terminated Grywalski in retaliation for taking FMLA leave.

153.   Parker terminated Grywalski before he could report his Work-related Injury to a doctor.

154.   As a result of being harassed and insulted on the basis of his disability during his employment at Parker and being wrongfully terminated from Parker, Grywalski has suffered severe emotional distress, anxiety, and depression.

### COUNT I: DISABILITY DISCRIMINATION UNDER O.R.C. 4112.01 et. seq.

155.   Grywalski restates each and every prior paragraph of this Complaint as if it were fully restated herein.

156.   Grywalski suffers from a disability.

157.   Grywalski is disabled.

158.   In the alternative, Defendants perceived Grywalski as being disabled.

The Employee's Attorney.™



159.    Grywalski's conditions constituted mental impairments.

160.    Grywalski's conditions substantially impaired one or more of his major life activities, including working.

161.    Defendants perceived Grywalski's conditions to substantially impair one or more of his major life activities, including working.

162.    Defendants treated Grywalski differently than other similarly situated employees based on his disabling condition.

163.    Defendants violated R.C. § 4112.01 *et seq.* by treating Grywalski differently from other similarly situated, non-disabled employees.

164.    Defendants did not terminate other similarly situated non-disabled employees.

165.    Defendants violated R.C. § 4112.01 *et seq.* by targeting Grywalski for termination because of his disabilities.

166.    Defendants violated R.C. § 4112.01 *et seq.* by applying their employment policies in a disparate manner based on whether or not an employee is disabled.

167.    Defendants violated R.C. § 4112.01 *et seq.* by applying their disciplinary policies in a disparate manner based on whether or not an employee is disabled.

168.    Defendants violated R.C. § 4112.01 *et seq.* by using an employee's status as disabled or non-disabled as a factor when making significant employment-related decisions such as hiring, firing, and promotion opportunities.

169.    Defendants violated R.C. § 4112.01 *et seq.* by using an employee's status as disabled or non-disabled as a factor when evaluating an employee's performance.

170.    Defendants violated R.C. § 4112.01 *et seq.* by permitting supervisory employees to make harassing and/or disparaging comments to disabled employees, like Grywalski.

The Employee's Attorney.™



171.    Defendants violated R.C. § 4112.01 *et seq.* by permitting supervisory employees to force disabled subordinate employees to perform tasks in a manner that violated the employees' need for an accommodation.

172.    Defendants violated R.C. § 4112.01 *et seq.* by permitting employees to act in a manner that deliberately aggravates and triggers a disabled employee's disabling conditions.

173.    On or around February 17, 2021, Defendants terminated Grywalski's employment without just cause.

174.    Defendants terminated Grywalski's employment based on his disability.

175.    Defendants terminated Grywalski's employment based on his perceived disability.

176.    Defendants violated R.C. § 4112.01 *et seq.* by terminating Grywalski's employment because of Grywalski's disabling conditions.

177.    Grywalski suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

178.    As a direct and proximate result of Defendants' conduct, Grywalski suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II: FAILURE TO ACCOMMODATE UNDER O.R.C. 4112.01 et. seq.

179.    Grywalski restates each and every prior paragraph of this Complaint as if it were fully restated herein.

180.    Grywalski suffers from a disability.

181.    Grywalski informed Defendants of his disabling condition.

182.    During the First Accommodation Request, Grywalski requested accommodations from Defendants to assist with his disabilities.

183.    Grywalski's requested accommodation was reasonable.

The Employee's Attorney.™



184. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendants.

185. Defendants failed to engage in the interactive process of determining whether Grywalski needed an accommodation.

186. Defendants failed to provide an accommodation.

187. By failing to engage in the interactive process Defendants violated R.C. § 4112.01 *et seq.*

188. By failing to provide an accommodation Defendants violated R.C. § 4112.01 *et seq.*

189. As a direct and proximate result of Defendants' conduct, Grywalski suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### **COUNT III: RETALIATORY DISCRIMINATION UNDER O.R.C. 4112.01 et. seq.**

190. Grywalski restates each and every prior paragraph of this Complaint as if it were fully restated herein.

191. As a result of the discriminatory and/or harassing conduct described above, Grywalski complained about the discrimination and harassment that he was experiencing.

192. Subsequent to Grywalski verbally reporting disability discrimination, Grywalski was subject to increased and unwarranted retaliatory disciplinary actions.

193. Subsequent to Grywalski's First Protected Complaint, Parker endangered Grywalski by informing Mauer that Grywalski had filed a complaint against Mauer.

194. Subsequent to Grywalski's First Protected Complaint, Defendants suspended Grywalski.

195. Subsequent to Grywalski's First Protected Complaint, Defendants disciplined Grywalski.

196. Subsequent to Grywalski's First Protected Complaint, Defendants terminated Grywalski's employment.

The Employee's Attorney.™



197. Subsequent to Grywalski's Second Protected Complaint, Defendants disciplined Grywalski.

198. Subsequent to Grywalski's Second Protected Complaint, Defendants terminated Grywalski's employment.

199. Parker's actions were retaliatory in nature based on Grywalski's opposition to the unlawful discriminatory conduct.

200. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

201. As a direct and proximate result of Parker's retaliatory discrimination against and termination of Grywalski, he suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

202. Grywalski restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

203. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

204. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

205. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured

The Employee's Attorney.™



employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."(*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

206. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

207. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

208. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

209. Defendants' termination of Grywalski jeopardizes these public policies.

210. Defendants' termination of Grywalski was motivated by conduct related to these public policies.

211. Defendants had no overriding business justification for terminating Grywalski.

212. As a direct and proximate result of Defendants' conduct, Grywalski has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.



## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

213.    Grywalski restates each and every prior paragraph of this Complaint as if it were fully restated herein.

214.    During his employment, Grywalski utilized FMLA leave.

215.    After Grywalski utilized his qualified FMLA leave, Defendants retaliated against him.

216.    Defendants retaliated against Grywalski by terminating his employment.

217.    Defendants willfully retaliated against Grywalski in violation of U.S.C. § 2615(a).

218.    As a direct and proximate result of Defendants' wrongful conduct, Grywalski is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Paul Grywalski demands from Defendants the following:

(a) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Grywalski for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(b) Awarding Grywalski compensatory and monetary damages against Defendants to compensate Grywalski for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Grywalski for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Grywalski for harm to her professional and personal reputation and loss of career fulfillment;

The Employee's Attorney.™



(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Grywalski in an amount to be determined at trial, plus prejudgment interest;

(f) An award of punitive damages;

(g) An award of costs that Grywalski has incurred in this action, as well as Grywalski's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: drew.pappert@spitzlawfirm.com
        brian.spitz@spitzlawfirm.com

*Attorneys For Plaintiff Paul Grywalski*

The Employee's Attorney.™



## <u>JURY DEMAND</u>

Plaintiff Paul Grywalski demands a trial by jury by the maximum number of jurors permitted.

Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**

*Attorney For Plaintiff Paul Grywalski*

The Employee's Attorney.™

